UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
KENNY WORTHEN

            Plaintiff,

-vs-

CARPENTER & SMITH, INC.,

            Defendant.
---------------------------------------------------X

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

06 Civ. 3381 (CLB) (GAY)

### INTRODUCTION

1. Plaintiff brings this action to redress the racial discrimination to which he was subjected while employed by defendant, Carpenter & Smith.

### PARTIES

2. Plaintiff Kenny Worthen is a black male who resides in Newburgh, New York, within this Judicial district.

3. Defendant Carpenter & Smith, Inc., is a corporation based in Monroe, New York. Organized pursuant to the laws of the State of New York, defendant may sue and be sued.

### JURISDICTION AND VENUE

4. As plaintiff brings this action to enforce his civil rights under 42 U.S.C. § 1981, this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3) & (4) and 42 U.S.C. §§ 1981 and 1988.

5. Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission on March 22, 2007. As plaintiff received the Right to Sue letter on August 23, 2007, the Title VII claim is timely.

6. As the events giving rise to this action arose under the same nucleus of operative facts as the Federal claims, pursuant to 28 U.S.C. § 1367, this Honorable Court has subject matter jurisdiction over the State law claims.

III **FACTUAL AVERMENTS**

7. Plaintiff commenced working for defendant in August 2006 as a truck driver delivering oil to defendant's customers. At the time plaintiff worked for defendants he was one of only two African-Americans working there.

8. Immediately upon commencing his employment, co-workers bombarded plaintiff with racist comments and insults. On his first day, a co-worker named Andy asked plaintiff, "what does it feel like being a spook boy?" Andy clarified the question by asking, "what does it feel like being black?" Andy then called plaintiff "Kenny spook boy nigger" and said that, as a white man, he could say whatever he wanted to plaintiff without punishment and that "most of your people don't last long here because they don't like to take orders from us whites, so we run your ass out."

9. A few days later, when plaintiff entered the snack room at work, another co-worker, Ray, approached him with a knife. At the same time, Andy grabbed plaintiff by the rear-end, saying, "give me the KY jelly for this black ass. You ever been fucked by a white boy?" When plaintiff objected to this discriminatory treatment, the co-workers gave him the knife. Upon complaining about this incident, plaintiff's supervisor, Cathy, played down the episode by stating that the workers won the knife in a raffle.

10. Andy and Ray subsequently asked plaintiff if he had the knife and suggested that he would "cut [your]self down."

11. Plaintiff's colleagues regularly subjected him to a racially hostile work environment for the duration of his employment. Most of his co-workers called plaintiff "spook boy." At the company's annual dinner at a catering hall in New Windsor, N.Y., co-workers joked about plaintiff's race, calling him "black mother fucker" and "spook." They also coughed over plaintiff's food, grabbed him from behind and said he was "black and fucking ugly."

12. In addition, co-workers tampered with plaintiff's food by placing broken glass and a large rock in his cereal which plaintiff stored in a refrigerator at work. They also repeatedly sabotaged plaintiff's work vehicle.

13. Although plaintiff complained repeatedly about the racial harassment to Cathy and defendant's owner, Herbert Schneider, they failed to eradicate the hostile work environment.

14. Schneider – who is white – told plaintiff that the employees were treating him the same way and that he would talk to them about the harassment. However, the harassment continued unabated and Schneider told plaintiff on several occasions that "it's your choice, stay or leave."

15. Cathy also failed to properly remedy the hostile work environment. When plaintiff complained to Cathy, she told him to "toughen up." While Cathy said she would talk to plaintiff's co-workers, the harassment continued unabated.

16. At no time did defendant formally investigate plaintiff's racial harassment

complaints. Defendants' failure to remedy the problem only encouraged plaintiff's co-workers to continue the harassment and place plaintiff's physical health at risk. One co-worker, Andy, told plaintiff that the company had gotten rid of other blacks, implying that the racial harassment was intended to drive plaintiff from the workplace.

17. On March 8, 2007, a co-worker, Jerry, tailgated plaintiff in a Carpenter & Smith truck and attempted to push plaintiff off the road. Five days later, plaintiff discovered broken glass and glue on the seat of his work vehicle. Plaintiff sat on the broken glass, injuring his buttock.

18. When plaintiff complained about the broken glass to Cathy that day and said he was fed up and wanted to resign, she replied that if he resigned he would not be entitled to any workers compensation for a recent job injury. Cathy also said, "You are just like the last black we hired, Miles. You're all not worth a good job like this. That's why he lived in a shelter and you'll be there soon."

19. Since plaintiff was subjected to a racially hostile work environment and felt physically threatened as a result of the racial harassment which management failed to redress, he was constructively discharged.

20. Defendant deliberately and discriminatorily created work conditions so intolerable that a reasonable person in plaintiff's position would have felt compelled to resign.

21. As a result of plaintiff's constructive discharge he has lost back wages as well as future income and benefits.

22. The racial discrimination to which plaintiff was subjected caused him to suffer significant physical and emotional pain and suffering.

IV **CAUSES OF ACTION**

23. Plaintiff incorporates the allegations in ¶ 1-22 as if fully incorporated herein.

24. In subjecting plaintiff to a racially hostile work environment, defendant violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law.

25. In constructively discharging plaintiff on account of his race, defendant violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law.

WHEREFORE, plaintiff prays that this Honorable Court:

a. accept jurisdiction over this matter;

b. empanel a jury to hear and decide this matter;

c. award to plaintiff compensatory damages to redress his physical and emotional pain and suffering;

d. award to plaintiff punitive damages to punish defendant for its wilful violation of plaintiff's federal civil rights;

e. award to plaintiff reasonable attorneys' fees and costs incurred in prosecuting this action; and

f. award to plaintiff such other relief deemed just and proper.

Dated:   September 5, 2007

>Respectfully submitted,
>
>STEPHEN BERGSTEIN (6810)
>
>BERGSTEIN & ULLRICH, LLP
>15 Railroad Avenue
>Chester, New York 10918
>(845) 469-1277
>Counsel for plaintiff